Kira A. Schlesinger, Esq. (SB CA: 205357; AZ: 023450)
**SCHLESINGER CONRAD LAW FIRM**
3936 E. Desert Cove Avenue, 1st Fl.
Phoenix, Arizona 85028
Tel: 602-812-3661
Fax: 480-522-3674
E-Mail: docket@schlesingerconrad.com

*Attorneys for Plaintiff American Spirit*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| AMERICAN SPIRIT CORPORATION, an Minnesota corporation<br><br>Plaintiff,<br><br>vs.<br><br>E-PRINTWERX INTERNATIONAL LLC, an Arizona limited liability company,<br><br>Defendant. | CASE NO.:<br><br>COMPLAINT AND JURY TRIAL DEMAND |

Plaintiff American Spirit Corporation (hereinafter "American Spirit") alleges the following against Defendant e-printwerx International LLC (hereinafter "EPI"):

**NATURE OF THE ACTION**

1. This is an action for promissory estoppel and unjust enrichment arising under Illinois law, in which EPI has unjustly retained the benefit of having been paid approximately $750,000 by American Spirit in anticipation of a potential business relationship between the parties.

/ / /



COMPLAINT
1

**PARTIES, JURISDICTION AND VENUE**

2. American Spirit is a Minnesota corporation with its principal place of business in Illinois.

3. EPI is an Arizona limited liability company with its principal place of business in Arizona.

4. This Court has subject matter jurisdiction over the claim under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the amount in controversy in this case exceeds $75,000.

5. This Court may properly exercise personal jurisdiction over EPI because EPI resides in Arizona and continuously does business in Arizona.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because EPI resides in this District.

**BACKGROUND**

7. American Spirit provides technology and data services to other companies. These services assist companies in understanding data and in generating lists that are useful for marketing purposes.

8. EPI provides technology services to other companies to assist those companies in their marketing efforts. EPI claims, and has represented to American Spirit, that EPI has special expertise in the custom development of technologies used in connection with data for marketing purposes.

9. In or about 2014, American Spirit began discussions with Experian Marketing Solutions, Inc. ("Experian") concerning the development of technology comprising an online list fulfillment system (the "Technology"), to which American Spirit would grant a license and other rights to Experian to access, use and market as part of Experian's commercial offerings.

10. Thereafter, American Spirit began discussions with EPI to enter into an arrangement whereby EPI would, as a subcontractor of American Spirit, undertake a significant portion of the development of the Technology, at the sole expense of American



Case 2:17-cv-01608-SPL   Document 1   Filed 05/25/17   Page 3 of 7

Spirit.  EPI has represented to American Spirit and to Experian that the Technology is nearly complete, although EPI has not allowed American Spirit or Experian to see, inspect and/or test the Technology.

11. American Spirit and Experian substantially completed the negotiations between them concerning the provision of the Technology, but did not enter into a written agreement. American Spirit desired to finalize its agreement with EPI prior to entering into a written agreement with Experian.

12. During the course of the negotiations between American Spirit and Experian, American Spirit authorized, and in fact encouraged, EPI to participate in the negotiations.  These negotiations included a meeting in Illinois attended by one of EPI's principals, Graham Brown.  Graham Brown also participated in numerous conference calls with American Spirit and Experian.

13. Accordingly, EPI was at all times aware of the commercial terms being negotiated between American Spirit and Experian, and EPI, through Graham Brown, expressed approval of those commercial terms to American Spirit.

14. American Spirit and EPI engaged in substantial negotiations in an attempt to formalize their arrangement, including the preparation of basic deal points in order to establish structure between the parties during build-out of the Technology and funding for the Technology.  But the parties did not enter into a formal written agreement or otherwise come to a final arrangement.

15. Instead, American Spirit relied on EPI's representations that EPI had the ability and the background to develop the Technology in a custom manner for use in connection with the arrangement with Experian.

16. In further reliance upon EPI's representations, American Spirit paid to EPI no less than $750,000 (the "Payment") to compensate EPI for its development costs for the Technology. Additionally, in furtherance of the anticipated collaboration between the parties, American Spirit has deferred the collection of approximately $150,000 in amounts due from EPI under other business arrangements between them. Further, American Spirit



COMPLAINT
3

has incurred significant cost and expense in professional fees and employee resources in pursuit of the anticipated collaboration.

17. Despite being paid these substantial amounts from American Spirit, EPI has, on information and belief, purposefully delayed production of the Technology, has requested more money from American Spirit, and has refused to negotiate in good faith to finalize and formalize a written agreement between EPI and American Spirit. In essence, EPI has held the entire transaction hostage.

18. During the course of negotiations, despite being fully aware of the status of negotiations between American Spirit and Experian, and the terms of such arrangement upon which Experian would insist, EPI continued to demand terms between EPI and American Spirit that were inconsistent with the anticipated arrangement between American Spirit and Experian.

19. EPI represented to American Spirit and Experian at numerous points in time that the Technology would be completed and EPI failed to meet each and every deadline. With each and every failed deadline, EPI requested additional funding from American Spirit.

20. As of April 2017, American Spirit communicated to EPI that it no longer wished to continue negotiations and desired to fully separate from EPI. These communications by American Spirit to EPI were based on representations American Spirit received from Experian indicating that Experian no longer trusted EPI to finalize the Technology due to EPI's inability to finish the Technology within a reasonable time frame and budget.

21. Nonetheless, EPI has informed American Spirit that it plans to take the work it has done on the Technology (which American Spirit has funded) and attempt to deal directly with Experian, thus circumventing American Spirit and depriving American Spirit from the benefits of its substantial investment.

22. By email dated April 11, 2017, counsel for EPI communicated to counsel for American Spirit, among other things, that "[i]f [American Spirit] do [sic.] not wish to



remain involved in this project, EPI will open discussions with Experian regarding the possibility of a direct contract between EPI and Experian."

### COUNT I – PROMISSORY ESTOPPEL
(ILLINOIS LAW)

23. American Spirit restates and incorporates the allegations set forth in paragraphs 1 through 22 above as if fully set forth in this paragraph.

24. EPI made an unambiguous promise to American Sprit that it would develop the Technology for American Spirit.

25. In light of EPI's experience, expertise and ongoing representations to American Spirit, American Spirit reasonably relied on EPI's promise when it provided EPI with approximately $750,000 to cover development costs, deferring approximately $150,000 of EPI's outstanding debt to American Sprit, and incurring significant fees and expenses in pursuit of the anticipated collaboration. American Spirit relied on EPI's promises based on American Spirit's many years of prior experience with EPI, and upon EPI's several express representations that it would complete the work within certain timeframes.

26. That American Spirit would rely on EPI's promise was expected and foreseeable.

27. American Spirit has suffered a detriment as a result of its reliance, the full amount of which will be proven at trial.

### COUNT 2 – UNJUST ENRICHMENT
(ILLINOIS LAW)

28. American Spirit restates and incorporates the allegations set forth in paragraphs 1 through 27 above as if fully set forth in this paragraph.

29. The Payment has resulted in a substantial benefit to EPI.  It has provided EPI with revenue, and has covered EPI's costs to work on developing the Technology, which has commercial value if licensed to or otherwise provided to third parties, including Experian.

**Schlesinger Conrad Law Firm**
3936 E. Desert Cove Avenue, 1st Fl., Phoenix, AZ 85028



30. By refusing to engage in discussions that would lead to the completion of an agreement between EPI and American Spirit, EPI has created circumstances where it retains the benefit of the Payment from American Spirit, without any detriment to EPI in the form of granting any rights to the Technology to American Spirit.

31. Without an agreement in place between American Spirit and EPI concerning the Technology, American Spirit has suffered and continues to suffer great detriment, in that it has paid a substantial amount of money without anything to show in return. Despite the Payment, EPI has not provided to American Spirit the work it has done in development of the Technology.

32. EPI's retention of the Payment from American Spirit without taking the additional steps to make the Technology available to American Spirit for its use in a transaction with Experian is unfair, and otherwise violates fundamental principles of justice, equity and good conscience.

33. Moreover, EPI's efforts to work directly with Experian – cutting American Spirit out of the transaction that its money has enabled to take place – further violates fundamental principles of justice, equity and good conscience.

34. It is inequitable and unconscionable for EPI to have enjoyed – and seek to continue to enjoy – the benefit of American Spirit's actions without compensating American Spirit, and EPI has been and continues to be unjustly enriched to American Spirit's detriment.

## PRAYER FOR RELIEF

WHEREFORE, American Spirit seeks judgment against EPI, as follows:

1. The total amount of the Payment (which, as of the date of filing of this Complaint, totals no less than $750,000), including pre-judgment and post-judgment interest as provided by law;

2. Permanent injunctive relief against EPI barring its granting of any rights in the materials comprising the Technology which it has developed in anticipation of the arrangement between EPI and American Spirit;



3. An award to American Spirit of its damages in an amount to be proven at trial, including, but not limited to, the $150,000 of deferred debt as referenced in paragraphs 16 and 25;

4. As allowed by law, an award of special, exemplary, and/or punitive damages in an amount to be determined at trial;

5. Attorney's fees and costs incurred herein against EPI in accordance with any applicable law; and

6. For such other and further relief as the Court deems just and proper in the circumstances.

## JURY TRIAL DEMAND

American Spirit requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

Dated:  May 25, 2017                              **SCHLESINGER CONRAD LAW FIRM**

By:  /s/ *Kira A. Schlesinger*
Kira A. Schlesinger,
Attorneys for Plaintiff
American Spirit Corporation.

